UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN MADRID, | No. 2:13-cv-01715-MCE-KJN |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| COUNTY OF MONO, et al., | |
| Defendants. | |

Through this action, Plaintiff Jonathan Madrid ("Plaintiff") seeks relief under 42 U.S.C. § 1983 for the alleged violation of his First Amendment rights arising from his employment with the Defendant County of Mono Sheriff's Department pursuant to 42 US.C. § 1983. Plaintiff also seeks relief for retaliation pursuant to California Labor Code section 1102.5. On October 18, 2013, Defendant Ralph Obenberger ("Obenberger") moved to dismiss the claim against him pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] ECF No. 12. The motion was stayed, pending service of Defendants County of Mono ("the County"), Richard Scholl ("Scholl"), and David O'Hara ("O'Hara") (collectively, with Obenberger, "Defendants").

///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1

Defendant Obenberger's motion was then set for hearing on February 20, 2014, along with a Motion to Dismiss pursuant to Rule 12(b)(6) filed by Defendants County of Mono, Scholl, and O'Hara.  ECF No. 26.

For the reasons set forth below, Defendant Obenberger's Motion is DENIED and Defendants O'Hara, Scholl, and County of Mono's Motion is GRANTED IN PART and DENIED IN PART.[2]

## BACKGROUND[3]

In 2001, Defendant County of Mono Sheriff's Department hired Plaintiff as a deputy sheriff.  At all times relevant to the complaint, Defendant Scholl served as the County's Sheriff; Defendant Obenberger was the County's Undersheriff, and Defendant O'Hara was a Lieutenant for the County.

In 2008, Plaintiff spoke out about the mishandling of medications for jail inmates. Plaintiff notified non-parties Lieutenant Weber, Sergeant Minder, and Sergeant Nelson that the Sheriff's Department's practice violated the law.  According to Plaintiff, this report and disclosure was not part of Plaintiff's normal work duties, and Plaintiff was never assigned the task of investigating or reporting wrongdoing by Sheriff's Department employees.  Rather, Plaintiff alleges he spoke up because of his "genuine concern for the health of the inmates."  Plaintiff also disclosed information about another Sheriff's Department employee, who Plaintiff claims falsified a report.  By way of response, Defendant O'Hara issued a written directive to Plaintiff, ordering that Plaintiff not report crimes or emergencies, or personally assist those in need, while Plaintiff was off duty.

///
///

---

[2] Because oral argument would not be of material assistance, the Court ordered these matters submitted on the briefs pursuant to E.D. Cal. Local R. 230(g).

[3] The following recitation of facts is taken, at times verbatim, from Plaintiff's First Amended Complaint.  Compl., Oct. 16, 2013, ECF No. 10.

Plaintiff alleges that Defendants then retaliated against him for this protected conduct in numerous ways.  First, Plaintiff alleges that Defendants unreasonably denied him his Advanced P.O.S.T. Certificate and attendant pay increase.  Later, in about March 2009, Lieutenant O'Hara was overheard saying that his goal was to have Plaintiff's employment terminated.  Plaintiff reported this incident to Undersheriff Obenberger, who took no action.  O'Hara was overheard making similar remarks in 2010 and 2011.

Plaintiff also alleges that from 2008 to the date of Plaintiff's termination, Defendants gradually stopped giving Plaintiff special assignments, such as explosives and fire death investigations.  Throughout this period, Defendants also called Plaintiff into their offices and questioned him about his personal life (e.g., the status of his divorce, his finances, and his personal relationships).  Defendants later tried to use this information against Plaintiff in his administrative appeal hearing.

Later, in 2011, Defendants purportedly began to discipline Plaintiff for wholly pretextual reasons.  First, Defendant Obenberger "initiated a sham investigation" against Plaintiff based on Plaintiff's alleged theft of County gasoline.  The allegations turned out to be unfounded, but Defendants nonetheless used the investigation to embarrass Plaintiff.  Later that year, Defendants served Plaintiff with a notice of proposed discipline, proposing termination of his employment for his alleged failure to account for ten hours on his time card.  Plaintiff was placed on administrative leave, and, on November 9, 2011, he received a written notice of final disciplinary action imposing employment termination.

Then, on April 25, 2012, while Plaintiff was still home on administrative leave, Defendants ordered Plaintiff to report to the Sheriff's Department station in Bridgeport by May 1, 2012.  Upon reporting, Plaintiff was forced to sit a in a chair in the front lobby behind a counter and greet individuals who walked in.  Plaintiff alleges he was made to "be seated in a chair like a child for nine hours a day," for the purpose of intimidating, harassing, and retaliating against him.

In June 2012, Defendants initiated an additional sham investigation against Plaintiff for allegedly sleeping while on duty.

Later that same month, Plaintiff's treating doctor ordered Plaintiff taken off work. Plaintiff was forced to use his sick time, and when his sick time ran out, Plaintiff chose to remain home from work unpaid rather than return to work. In September 2012, Plaintiff began drawing on long term disability benefits he held through the California Law Enforcement Association. Defendants then contacted the California Law Enforcement Association in an attempt to stop Plaintiff from receiving these benefits.

Finally, when Defendants realized that Plaintiff was going to win his administrative appeal, and despite the fact Plaintiff's doctor had ordered him off work, Defendants claimed that Plaintiff had instead abandoned his job. On January 10, 2013, Defendant Obenberger sent Plaintiff a letter accusing him of the same because Plaintiff had allegedly failed to provide a doctor's note for his absence.

On February 7, 2013, the Arbitrator issued a written decision in Plaintiff's favor in his administrative appeal and ordered full reinstatement. The arbitrator found that "Management acted in a discriminatory and capricious manner which was unreasonable under the circumstances." Compl. at 10. Defendants nonetheless refuse to reinstate Plaintiff.

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

4

detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

Presently before the Court are motions to dismiss by all Defendants.  The Court will first address the merits of the motions by the individual Defendants, and then address the merits of the motion by the County of Mono.

    **A.**    **Individual Defendants**

        **1.**    **Official Capacity Claims**

Defendants each assert that they may only be sued in their individual capacities, not their official capacities.  Plaintiff amended the caption of his First Amended Complaint, ECF No. 10, to reflect that Defendants O'Hara, Obenberger and Scholl are sued only in their individual capacities.  Plaintiff also clearly states that he has no opposition to removing language in the body of the complaint referencing the individual defendants acting within the course and scope of their employment to clarify that Defendants are sued only individually.

Accordingly, to the extent that the First Amended Complaint contains claims against Defendants Obenberger, O'Hara and Scholl in their official capacities, those claims are dismissed.

///

### 2. Individual Capacity Claims

It is well settled that the state may not abuse its position as employer to stifle "the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest." Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009) (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)).  Acknowledging the limits on the state's ability to silence its employees, the Supreme Court has explained that "[t]he problem in any case is to arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. (citing Pickering, 391 U.S. at 568).

Courts "follow a sequential five-step inquiry to determine whether an employer impermissibly retaliated against an employee for engaging in protected speech." Ellins v. City of Sierra Madre, 710 F.3d 1049, 1056 (9th Cir. 2013) (citing Eng, 552 F.3d at 1070). "First, the plaintiff bears the burden of showing: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; and (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action." Robinson v. York, 566 F.3d 817, 822 (9th Cir. 2009) (internal quotation marks and citation omitted); Eng, 552 F.3d at 1070.  "Next, if the plaintiff has satisfied the first three steps, the burden shifts to the government to show: (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." Id.

Here, Defendants Obenberger, Scholl, and O'Hara challenge only the third element—that is, they contend that Plaintiff has not pled facts sufficient to show that Plaintiff's protected speech was a substantial or motivating factor in the adverse employment action.  More specifically, Defendants contend that the allegations are insufficient to show that any of them is individually linked to any adverse employment

action, and that the allegations do not reveal that any action at all was taken against Plaintiff as a result of his allegedly protected speech.

It is Plaintiff's burden to plead facts sufficient to meet this third step. Eng, 552 F.3d at 1071 (quoting Freitag v. Ayers, 468 F.3d 528, 543 (9th Cir. 2006). "This third step is purely a question of fact." Id. Plaintiff must allege that "Defendants were aware of [Plaintiff's] instances of protected speech." Dowell v. Contra Costa Cnty., 928 F. Supp. 2d 1137, 1150 (N.D. Cal. 2013) (citing Alpha Energy Savers v. Hansen, 381 F.3d 917, 929 (9th Cir. 2004)). Additionally, "Plaintiff must . . . plead at least one of the following to sufficiently allege that the protected speech substantially motivated Defendants to undertake the adverse actions: (i) proximity in time between her expressive conduct and the allegedly retaliatory actions; (ii) that the defendants expressed opposition to her protected speech, either to her or others; or (iii) that Defendants' proffered explanations for their adverse actions were false and pretextual." Id. (citing Alpha Energy Savers, 381 F.3d 917, 929 (9th Cir. 2004); Chaffee v. Chiu, No. C–11–05118–YGR, 2012 WL 1110012, at *8-9 (N.D. Cal. Apr. 2, 2012)). In assessing whether a plaintiff has made an adequate claim of retaliatory motive, a district court is justified in deciding the question based on the "totality of the facts." Id. (quoting Coszalter v. City of Salem, 320 F.3d 968, 978 (9th Cir. 2003)).

Defendants in the present case take far too narrow a view of Rule 8's pleading requirements. Defendants are correct that very few allegations are made specifically about Defendants as individuals. That is, Plaintiff makes only a handful of allegations specifically about "Defendant Obenberger," "Defendant Scholl," or "Defendant O'Hara." However, the majority of Plaintiff's allegations are about "Defendants," and these allegations make clear that Defendants' actions "were a pretext for retaliation," Compl. at 6, "intended to intimidate, harass[,] and retaliate against Plaintiff for his protected speech," Compl. at 7. It is clear that Defendants Obenberger, O'Hara, and Scholl—as Defendants named in this suit—are each included in Plaintiff's allegations about "Defendants."

For example, while the paragraph alleging that Defendant Obenberger "sent a letter to Plaintiff accusing Plaintiff of 'abandoning' his job because Plaintiff allegedly failed to provide a doctor's note for his absence" from work does not contain the specific allegation that Defendant Obenberger retaliated against Plaintiff, the previous allegations contained in the Complaint clearly allege that Defendants "conjured up another way to fire Plaintiff" by accusing Plaintiff of abandoning his job, and Defendants' desire to have Plaintiff fired was their chosen manner of retaliation against Plaintiff.  Compl. at 9. Similarly, Plaintiff specifically alleges that "[i]n or about March 2009, Lieutenant O'Hara was overheard publicly stating his goal was to have Plaintiff's employment terminated." Compl. at 5.  The Court reads this specific allegation together with the allegations contained in the rest of the complaint, which state that Defendants took adverse actions against Plaintiff and ultimately terminated him for his protected conduct.

Although Plaintiff at one point makes the conclusory allegation that "Defendants have taken the aforementioned actions against Plaintiff in direct retaliation for, and in response to the various protected activities of Plaintiff," Plaintiff's prior factual allegations serve to flesh out these conclusory statements, and are adequate to give each Defendant notice of the claims against him and the grounds therefor.

Thus, when viewing the "totality of the facts" in the light most favorable to Plaintiff, it is apparent that Defendants knew about Plaintiff's protected speech and "Defendants' proffered explanations for their adverse actions were false and pretextual." Dowell, 928 F. Supp. 2d at 1150 (citations omitted).  Accordingly, the pleadings sufficiently allege that Plaintiff's protected speech, in raising issues regarding the inmates' medications and a false report by an officer, was a substantial or motivating factor in the adverse employment actions against him.

Because Defendants' challenge to the third element of Plaintiff's § 1983 claim is without merit, Defendants' Obenberger, Scholl and O'Hara's Motions are DENIED.

///

///

9

### B. Defendant County of Mono's Motion to Dismiss

Local governments are "persons" subject to suit for "constitutional tort[s]" under § 1983. Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978). The County of Mono, as a local government, is therefore subject to suit under § 1983. "A local government entity is liable under § 1983 when 'action pursuant to official municipal policy of some nature cause[s] a constitutional tort.'" Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001) (quoting Oviatt v. Pearce, 954 F.2d 1470, 1473-74 (9th Cir. 1992)). "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" Id. (quoting Oviatt, 954 F.2d at 1474) (citing Monell, 436 U.S. at 690-91). "The custom or policy of inaction, however, must be the result of a conscious or deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. (internal citations and quotations omitted).

Thus, to prevail on his § 1983 claim against the County of Mono, Plaintiff must sufficiently allege that: (1) he was deprived of his constitutional rights by the County of Mono and its employees acting under color of state law; (2) that the County of Mono has customs or policies which "amount[ ] to deliberate indifference" to Plaintiff's constitutional rights; and (3) that these policies are the "moving force behind the constitutional violation[s].'" Id. at 681-82 (quoting Oviatt, 954 F.2d at 1473, 1477).

> There are three ways to show a policy or custom of a municipality: (1) [b]y showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) [b]y showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision or (3) [b]y showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

Garcia v. City of Merced, 637 F. Supp. 2d 731, 761 (E.D. Cal. 2008) (quoting Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005)). "A municipal policy may be

inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." Id. Municipalities can be held liable "if its deliberate policy caused the constitutional violation alleged." Id. (citing Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007)). "In this circuit, a claim of municipal liability under Section 1983 is sufficient to withstand a motion to dismiss 'even if based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" Karim–Panahi v. L.A. Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988) (quoting Shah v. County of Los Angeles, 797 F.2d 743, 747 (9th Cir. 1986)).

Here, Plaintiff fails to identify the specific customs or policies which amount to deliberate indifference to Plaintiff's constitutional rights. Although Plaintiff summarily pleads that the County delegated its final policy-making authority to Defendants Scholl and Obenberger, and that the County adopted and ratified each of the decisions of Defendants Scholl and Obenberger as its own policies, customs, practices, or decisions, these pleadings are conclusory, and fail to put forward specific facts showing that the County is liable for the alleged violations of Plaintiff's constitutional rights.

Accordingly, Defendant County of Mono's Motion to Dismiss is GRANTED.

## CONCLUSION

For the reasons just stated, it is HEREBY ORDERED THAT:

1. Defendant Obenberger's Motion to Dismiss, ECF No. 12, is DENIED; and
2. Defendants County of Mono, O'Hara, and Scholl's Motion to Dismiss, ECF No. 26, is GRANTED as to Defendant County of Mono and DENIED as to Defendants O'Hara and Scholl.

///
///
///

Plaintiff may, but is not required to, file an amended complaint. If no amended complaint is filed within twenty (20) days of the date of this Order, the causes of action dismissed by this Order shall be dismissed without leave to amend and without further notice to the parties.

IT IS SO ORDERED.

Dated: February 27, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT