1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT

9           EASTERN DISTRICT OF CALIFORNIA

10

11   JONATHAN MADRID,                          No.  2:13-cv-01715-MCE-KJN

12              Plaintiff,

13        v.                                   **MEMORANDUM AND ORDER**

14   COUNTY OF MONO, et al.,

15              Defendants.

16

17        Through this action, Plaintiff Jonathan Madrid ("Plaintiff") seeks relief under

18   42 U.S.C § 1983 for the alleged violation of his First Amendment rights arising from his

19   employment with the Defendant County of Mono Sheriff's Department ("the

20   Department").  Plaintiff names as Defendants the County of Mono ("the County"), Sheriff

21   Richard Scholl ("Defendant Scholl"), Undersheriff Ralph Obenberger ("Defendant

22   Obenberger"), and David O'Hara ("Defendant O'Hara") (collectively "Defendants").

23   Plaintiff also seeks relief for retaliation under California Labor Code section 1102.5(b).

24   Plaintiff has previously amended his Complaint, and the County now moves to dismiss

25   Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can

26   ///

27   ///

28   ///

1

1   be granted pursuant to Federal Rule of Civil Procedure[1] 12(b)(6).  Def's Mot., May 15,
2   2014, ECF No. 39.

3          For the reasons below, the County's Motion to Dismiss is DENIED.[2]

5                                      **BACKGROUND**[3]

7          In 2001, the Department hired Plaintiff as a deputy sheriff.  The first years of
8   Plaintiff's career with the department were successful; he received forty-three
9   commendations and performed several different roles within the department.

10         In 2008, Plaintiff "spoke out about the mishandling of medications for jail inmates."
11  Compl. at 4.  Plaintiff notified Lieutenant Weber, Sergeant Minder and Sergeant Nelson
12  that the Department's practice violated the law.  The disclosures made by Plaintiff were
13  not part of his normal work duties; rather, he spoke out because of "genuine concern for
14  the health of the inmates."  Compl. at 5.  Additionally, Plaintiff disclosed information
15  regarding the falsification of a report by another member of the Department.  In response
16  to Plaintiff's actions, Defendant O'Hara issued a written directive to Plaintiff that he not
17  report crimes or emergencies, or personally render assistance to those in need, while
18  off-duty.

19         Because of his disclosures, Plaintiff alleges that employees of the County, acting
20  as final policymakers for the County, retaliated against him in numerous ways.  Plaintiff
21  alleges that Defendants retaliated against him by denying his advanced P.O.S.T.
22  Certificate and attendant pay increase.  Later, in 2009, according to Plaintiff, Defendant
23  O'Hara was overheard publicly announcing his goal to have Plaintiff ' terminated.

25         [1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

26         [2] Because oral argument would not be of material assistance, the Court ordered these matters
27  submitted on the briefs pursuant to E.D. Cal. Local R. 230(g).

28         [3] The following recitation of facts is taken, at times verbatim, from Plaintiff's Second Amended Complaint. Compl., May 15, 2014, ECF No. 35.

1   Plaintiff reported that incident to Defendant Obenberger, but Defendant Obenberger took
2   no action.

3   　　　On several occasions between 2008 and the date of his employment termination,
4   the individual Defendants called Plaintiff into their offices and questioned him about the
5   status of his divorce, his finances, and his personal relationships.  Plaintiff claims that
6   Defendants later attempted to use this information against Plaintiff in his administrative
7   appeal hearing.  Plaintiff contends that during this period Defendants gradually
8   eliminated Plaintiff's special assignments and denied him new opportunities without
9   giving Plaintiff any  explanation for those changes.

10   　　　In May 2011, Plaintiff claims that Defendant Obenberger initiated a sham
11   investigation against Plaintiff for alleged theft of the County's gasoline.  Plaintiff states
12   Defendants served him the disposition paperwork in front of several other officers and
13   publicly announced that the paperwork involved an Internal Affairs Investigation against
14   Plaintiff.  Plaintiff was immediately placed on administrative leave and forced to
15   surrender his badge, gun, and law enforcement identification card.  A few days later,
16   Defendant Scholl sent a letter to Plaintiff imposing an additional twenty-hour  suspension
17   which had the effect of reducing Plaintiff's final paycheck by twenty hours of paid time,
18   which Plaintiff claims was done "with no legitimate reason . . . other than spiteful, further
19   retaliation."  Compl. at 7.

20   　　　While on administrative leave, Defendants ordered Plaintiff to report to the
21   Department.  There, Plaintiff claims he was not reissued his gun, badge, or identification
22   card, and was subjected to menial tasks by Defendants for the purpose of humiliating
23   Plaintiff.  During this time, Defendants initiated a second "sham" investigation against
24   Plaintiff for allegedly sleeping on the job.

25   　　　In June 2012, Plaintiff's treating doctor took him off work.  Plaintiff eventually
26   depleted his accrued sick time and began drawing disability benefits through a private
27   insurance policy that Plaintiff held with California Law Enforcement Association. Plaintiff
28   ///

3

1   contends Defendants contacted the California Law Enforcement Association with the

2   intent to interrupt Plaintiff's collection of benefits.

3       Finally, when it became clear that Plaintiff was going to win his administrative

4   appeal, and despite the fact that Plaintiff's doctor ordered him off work, Defendants

5   claimed that Plaintiff had abandoned his job. On January 10, 2013, Defendant

6   Obenberger sent a letter to Plaintiff accusing him of the same because Plaintiff had

7   allegedly failed to provide a doctor's note for his absence.

8       On February 7, 2013, the Arbitrator of the administrative appeal issued a written

9   decision in Plaintiff's favor, ordering full reinstatement. The Arbitrator found that

10  "[m]anagement acted in a discriminatory and capricious manner which was

11  unreasonable under the circumstances." Compl. at 10. Defendants nonetheless refuse

12  to reinstate Plaintiff.

13

14                              **STANDARD**

15

16      On a motion to dismiss for failure to state a claim under Federal Rule of Civil

17  Procedure 12(b)(6), all allegations of material fact must be accepted as true and

18  construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins.

19  Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain

20  statement of the claim showing that the pleader is entitled to relief" in order to "give the

21  defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell

22  Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

23  47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

24  detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of

25  his entitlement to relief requires more than labels and conclusions, and a formulaic

26  recitation of the elements of a cause of action will not do." Id. (internal citations and

27  quotations omitted). A court is not required to accept as true a "legal conclusion

28  couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)

1   (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right

2   to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan

3   Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating

4   that the pleading must contain something more than "a statement of facts that merely

5   creates a suspicion [of] a legally cognizable right of action.")).

6       Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

7   assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and

8   quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard

9   to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

10  the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles

11  Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough

12  facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . .

13  have not nudged their claims across the line from conceivable to plausible, their

14  complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed

15  even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

16  recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

17  232, 236 (1974)).

18      A court granting a motion to dismiss a complaint must then decide whether to

19  grant leave to amend. Leave to amend should be "freely given" where there is no

20  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

21  to the opposing party by virtue of allowance of the amendment, [or] futility of the

22  amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

23  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

24  be considered when deciding whether to grant leave to amend). Not all of these factors

25  merit equal weight. Rather, "the consideration of prejudice to the opposing party . . .

26  carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

27  185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that

28  "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group,

5

1    Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

2    1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

3    1989) ("Leave need not be granted where the amendment of the complaint . . .

4    constitutes an exercise in futility . . . .")).

5

6                                          **ANALYSIS**

7

8             Presently before the Court is the County's motion to dismiss both Plaintiff's

9    § 1983 claim and Plaintiff's whistleblower claim, brought pursuant to California Labor

10   Code section 1102.5.  Each is addressed in turn, below.

11                    **A.       § 1983 Claim**

12           Local governments can be "persons" subject to suit for "constitutional tort[s]"

13   under § 1983.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).  The County,

14   as a local government, is therefore subject to suit under § 1983.  "A local government

15   entity is liable under § 1983 when 'action pursuant to official municipal policy of some

16   nature cause[s] a constitutional tort.'"  Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th

17   Cir. 2001) (quoting Oviatt v. Pearce, 954 F.2d 1470, 1473-74 (9th Cir. 1992)).  "In

18   addition, a local governmental entity may be liable if it has a 'policy of inaction and such

19   inaction amounts to a failure to protect constitutional rights.'"  Id. (quoting Oviatt,

20   954 F.2d at 1474).  "The custom or policy of inaction, however, must be the result of a

21   conscious or deliberate choice to follow a course of action made from among various

22   alternatives by the official or officials responsible for establishing final policy with respect

23   to the subject matter in question."  Id. (internal citations and quotations omitted).

24           Thus, to prevail on his § 1983 claim against the County, Plaintiff must sufficiently

25   allege that: (1) he was deprived of his constitutional rights by the County and its

26   employees acting under color of state law; (2) that the County has customs or policies

27   which "amount[ ] to deliberate indifference" to Plaintiff's constitutional rights; and (3) that

28   ///

these policies are the "moving force behind the constitutional violation[s].'" <u>Id.</u> at 681-82 (quoting <u>Oviatt</u>, 954 F.2d at 1473, 1477).

> There are three ways to show a policy or custom of a municipality: (1) [b]y showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) [b]y showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision or (3) [b]y showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

<u>Garcia v. City of Merced</u>, 637 F. Supp. 2d 731, 761 (E.D. Cal. 2008) (quoting <u>Menotti v. City of Seattle</u>, 409 F.3d 1113, 1147 (9th Cir. 2005)).

Here, Plaintiff contends Defendants were final policymakers on behalf of the County regarding personnel decisions. Compl. at 2, 3, 11. "Whether a particular official has 'final policymaking authority' is a question of state law." <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 737 (1989). This determination is not a "categorical, 'all or nothing' matter," <u>Streit v. Cnty. of Los Angeles</u>, 236 F.3d 552, 56o (9th Cir. 2001) (quoting <u>McMillian v. Monroe Cnty., Ala.</u>, 520 U.S. 781, 785 (1997)), but whether the official is a final policymaker for the local government "in a particular area, or on a particular issue," <u>Brewster v. Shasta Cnty.</u>, 275 F.3d 803, 806 (9th Cir. 2001) (quoting <u>McMillian</u>, 520 U.S. at 785). Courts within the Ninth Circuit have held that California sheriffs are final policymakers when it comes to investigating crimes, <u>Brewster</u>, 275 F.3d at 807, and in the administration of the release of prisoners from county jails, <u>Streit</u>, 236 F.3d at 564-65.

Plaintiff specifically alleges that the Sheriff is a final policymaker regarding "personnel decisions" for the County. Compl. at 11. Plaintiff supports his allegation with the contentions that the Board of Supervisors of the County delegated to the Sheriff their final policymaking authority "for all purposes connected with the management of employment" within the Department, and that their decisions were "not subject to review or reversal by any other employees or officials within the County of Mono." <u>Id.</u>

7

Contrary to the County's contentions, Plaintiff's allegations are neither conclusory nor groundless.  Examining the pleadings in the light most favorable to the nonmoving party, and accepting all allegations of fact as true, Plaintiff's allegations as to the policymaker prong of his § 1983 claim are sufficient to withstand a motion to dismiss.  Specifically, the Complaint identifies Defendants Scholl and Obenberger, the Sheriff and Undersheriff, respectively,  as final policymakers on behalf of the County  with respect to managing the Department.  The Complaint further  asserts the County  delegated authority over the Department's personnel decisions to Scholl and Obenberger,  and that their decisions in such matters were not reversible by any other County official.  Compl. at 11. These factual allegations are enough to satisfy the requirements of providing "fair notice" of the nature of the claim as well as the "grounds" on which it rests.  Twombly, 550 U.S. at 556 n.3.

Plaintiff's assertions are bolstered by review of the Mono County Code of Ordinances ("the Code").  The Code reveals that the Sheriff, as department head of the Sheriff-Coroner Department, is vested with independent authority to appoint employees, to direct employees, and to discipline Department employees.  County of Mono, Cal., Code of Ordinances §§ 2.68.50, 2.68.070, 2.68.220 (2013).  While the Code requires that certain disciplinary decisions be reviewed by the district attorney before discharge, it does not state that the district attorney has authority to reverse, cancel, or otherwise veto the decision. On the contrary, the district attorney is assigned to represent the department head seeking to implement discipline should the disciplined employee seek appeal.  Code of Ordinances § 2.68.302(F).  Moreover, the County does not contend, and the Court does not find, that the existence of an appellate process for disciplinary action nullifies the Defendants' designation as final policymakers for the Department.

**B.    California Labor Code section 1102.5 Claim**

The County next argues that Plaintiff insufficiently alleges a violation of California Labor Code section 1102.5.  Section 1102.5(b) is a whistleblower statute, stating in relevant part that

an employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information . . . to a government or law enforcement agency [or] to a person with authority over the employee . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

Cal. Lab. Code § 1102.5. To establish a prima facie case for retaliation under section 1102.5, an employee must show "(1) that he engaged in [a] protected activity, (2) that he was thereafter subjected to an adverse employment action by his employer, and (3) that there was a causal link between the protected activity and the adverse employment action." Love v. Motion Indus., Inc., 309 F. Supp. 2d 1128, 1134 (N.D. Cal. 2004).

Here, Plaintiff alleges that he was subject to adverse employment action in the form of persistent harassment, fraudulent misconduct investigations, and termination. Compl. at 11. Plaintiff contends that said actions were a consequence of his "[speaking] out" about the "mishandling of medication for jail inmates," and for disclosing information regarding "the falsification of a report by another member of the Department." Compl. 4-5. Defendants assert that these allegations are insufficient to meet the first requirement for a claim of retaliation under section 1102.5(b), which requires participation in a protected activity, because Plaintiff does not indicate what specific law was violated, as section 1102.5(b) also requires. Def.'s Mot. at 6.

While it is true that Plaintiff must plead more than mere conclusions, in this case Plaintiff need not go so far as citing a specific law regarding the falsification of the police report at the pleading stage. Rather, Plaintiff must only plead facts sufficient to demonstrate that his claim of retaliation is more than speculative, and to give notice to Defendants of the grounds on which the complaint rests. See Twombly, 550 U.S. at 555. By this standard, and accepting all allegations of fact in the complaint as true, Plaintiff's contentions that he disclosed the falsification of a police report satisfy section 1102.5's requirement. The Court agrees. As Plaintiff states: "Defendant cannot seriously contend that [Plaintiff's superiors] would not have understood that filing false

1   police report is a violation of the law." Pl.'s Opp'n, May 15, 2014, ECF No. 40 at 12-13.

2   Additionally, and in any event, as Plaintiff makes clear in his Opposition, falsification of a

3   police report by an officer is a crime under California Penal Code sections 118.1[4] and

4   148.5.  The plain language of section 1102.5 requires that Plaintiff prove the disclosure

5   of a violation of a statute, rule or regulation, and is not satisfied by the disclosure of

6   conduct that merely violates workplace guidelines. Mueller v. Cnty. of Los Angeles,

7   176 Cal. App. 4th 809, 822 (2009) ("To exalt . . . internal personnel disclosures with

8   whistleblower status would . . . thrust the judiciary into micromanaging employment

9   practices and create a legion of undeserving protected 'whistleblowers' arising from the

10  routine workings and communications of the job site").  While citing a specific law may

11  be necessary to withstand a motion for summary judgment for a claim under section

12  1102.5, see Love, 309 at 1134, it is not necessary at this stage in the proceedings.

13         However, Plaintiff's allegations that he disclosed information regarding

14  "mishandling of medications for jail inmates" cannot withstand a motion to dismiss.

15  While Plaintiff asserts that the practice "violated the law," such a declaration is

16  conclusory.  Compl. at 5.  Plaintiff does not specify which law was violated by this

17  conduct, and unlike the allegations surrounding the falsified police report, "mishandling

18  of medications" lacks sufficient factual basis for the court to infer that any Defendant

19  violated the law.  See Thomsen v. Sacramento Metro. Fire Dist., 2:09-CV-01108 FCD,

20  2009 WL 8741960 (E.D. Cal. Oct. 20, 2009) (granting motion to dismiss section

21  1102.5(b) claim where it was "unclear from the face of the complaint what state or

22  federal statute was or would be violated. Further, the factual basis for these violations is

23  unclear.").  What exactly this alleged "mishandling" entailed is left to speculation, and it is

24  not clear from the facts provided that this conduct violated any law.  Notably, Plaintiff's

25  Opposition neither elaborates nor elucidates this aspect of the section 1102.5 claim, but

26  rather recites the language of the Second Amended Complaint and declares the

27

28      [4] Plaintiff had originally cited to "§ 181.1," which is presumed erroneous and is here corrected.
    Opp'n. at 13.

language to be "factual allegations."  Opp'n. at 12.  These assertions and barebones allegations are inadequate to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 555.  Accordingly, the County's motion is granted with respect to Plaintiff's section 1102.5 claim to the extent that claim arises from the mishandling of medications.

## CONCLUSION

For the reasons set forth above, Defendant County's Motion to Dismiss, ECF No. 39 is GRANTED IN PART and DENIED IN PART, as follows:

1.   DENIED with respect to Plaintiff's Monell claim under 18 U.S.C. § 1983;

2.   DENIED with respect to Plaintiff's claim under Cal Lab. Code § 1102.5 to the extent the claim arises from the falsification of a police report; and

3.   GRANTED with leave to amend with respect to Plaintiff's claim under Cal. Lab. Code § 1102.5 to the extent the claim arises from the mishandling of medications.

Plaintiff may, but is not required to, file an amended complaint within thirty (30) days of the date of this memorandum and order.  If no amended complaint is filed, the causes of action dismissed by virtue of this memorandum and order shall be dismissed with prejudice and without further notice to the parties.

IT IS SO ORDERED.

Dated:  June 24, 2014

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT